## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **7 BAY CORP** | **Case No. 15-14885-FJB** |
| **Debtor.** | |

**~~THIRD~~ FOURTH AMENDED PLAN OF LIQUIDATION OF DEBTOR AND DEBTOR-IN-POSSESSION, 7 BAY CORP**

McAULIFFE & ASSOCIATES, P.C.
430 Lexington Street
Newton, MA 02466
John M. McAuliffe, Esq.
Kathryn Pellegrino, Esq.

Telephone:  (617) 558-6889
Facsimile:   (617) 558- 6882

Dated:  ~~July 28, 2017~~September 27, 2017

7 Bay Corp., a debtor and debtor-in-possession in the Bankruptcy Cases (as defined below), hereby propose the following plan of liquidation under Section 1121 of the United States Bankruptcy Code.

The Plan is a liquidating plan and does not contemplate the continuation of the Debtor's business other than as may be deemed appropriate to retain or maximize the value of the Debtor's Assets and the construction and sale of Units. The Plan provides for the appointment of a Liquidating Trustee to collect and administer Assets upon the sale of Units and after payment of the allowed secured claims. The Plan contemplates that the net proceeds from the completion and liquidation of Assets will be distributed by the Liquidating Trustee to the holders of Allowed Claims as hereinafter described.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I.  A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "in the Plan," "the Plan," "hereto," "herein", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions the Plan.

1.1 "7 Bay Street" shall mean the real property, owned by 7 Bay Corp, located at 7 Bay Street, Hull, Massachusetts.

1.2  "Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including Professional Fee Claims.

1.3 "Affiliate" shall mean any Person that is an affiliate of the Debtor or the Confirmed Debtor under the Bankruptcy Code.

1.4 "Allowed" shall mean, with reference to any Claim or Equity Interest:

(a)    a Claim or Equity Interest that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim or Equity Interest as to which a proof of claim or interest has been filed;

(b)    a Claim or Equity Interest as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate,

2

equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Non-Appealable Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     any Claim or Equity Interest expressly allowed under the Plan or pursuant to the Confirmation Order.

**1.5** "Asset(s)" shall mean any real or personal property of the Debtor, whether tangible or intangible and wherever situated, together with the proceeds thereof.

**1.6** "Assumed Lease(s)" shall mean, in the singular, any executory contract or unexpired lease that is assumed pursuant to Section 5.2(d) or (e) of the Plan, and in the plural shall mean all such contracts and leases.

**1.7** "Bankruptcy Case" shall mean, the Chapter 11 bankruptcy proceeding pending in the Bankruptcy Court under docket numbers 15-14885-FJB.

**1.8** "Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time.

**1.9** "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts in which the Bankruptcy Cases are pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.10**    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.11**    "Bar Date" shall mean April 29, 2016, the date fixed by an order of the Bankruptcy Court as the last date by which Persons asserting certain Claims against the Debtor must file a proof of claim or interest or be forever barred from asserting a Claim against the Debtor or its property, from voting on the Plan and/or sharing in distributions under the Plan.

**1.12**    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

**1.13**    "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.14**    "Cash Equivalents" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtors or an Affiliate, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of

America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than Two Hundred Million Dollars ($200,000,000).

**1.15** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, Avoidance Actions.

**1.16** "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.17** "Class" shall mean those classes designated in Article III of the Plan.

**1.18** "Collateral" shall mean any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.19** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

**1.20** "Confirmation Hearing" shall mean the hearing before the Bankruptcy Court on confirmation of the Plan.

**1.21** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.22** "Confirmed Debtor" shall mean the Debtor on or after confirmation of Debtor's Plan.

**1.23** "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.24** "Debtor" shall mean 7 Bay Corp.

**1.25** "Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.26**   "<u>Disputed Claim</u>" shall mean:

(a) if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b) if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Non-Appealable Order; or

(c) a Claim that is a Contingent or Unliquidated Claim.

**1.27**   "<u>Disputed Claim Amount</u>" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.28**   "<u>Disputed Claims Reserve</u>" shall have the meaning set forth in Section 6.5 of the Plan.

**1.29**   "<u>Distribution Record Date</u>" shall mean fifteen (15) days prior to the first scheduled hearing on the approval of the Disclosure Statement or such other date established by the Bankruptcy Court.

**1.30**   "<u>Effective Date</u>" shall mean the first Business Day after the later to occur of (a) the sixtieth day following the entry of the Confirmation Order, provided that no stay pending appeal of the Confirmation Order has been granted, or (b) the date that all conditions precedent to the effectiveness of the Plan have been satisfied or waived by the Debtor.

**1.31**   "<u>Equity Interest</u>" shall mean the interest of any holder of any general or limited partnership interest in or voting or non-voting shares of the Debtor, and all options and/or rights, contractual or otherwise, to acquire at any time any general or limited partnership interest in or voting or non-voting shares of any of the Debtor, as such interests exist immediately prior to the Effective Date.

**1.32**   "<u>Estate(s)</u>" shall mean in the singular, with reference to a specific debtor, the estate created in such debtor's Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code, and in the plural all of the Debtor's bankruptcy estates created pursuant to Section 541 of the Bankruptcy Code.

**1.33**   "<u>General Unsecured Claim</u>" shall mean a Claim that is: (a) not a Secured Claim, (b) not entitled to priority of payment under Section 507 of the Bankruptcy Code, and (c) not a Claim for an Equity Interest.

**1.34**   "<u>Independent Fiduciary</u>" shall mean an independent individual appointed by the Debtor, if so ordered by the Court, to investigate any causes of action against Debtor's principal, insider companies, and Avidia Bank.

**1.35**   "<u>Internal Revenue Code</u>" shall mean Title 26 of the United States Code, as amended from time to time.

**1.36**    "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code, provided that it shall not include any Debtor.

**1.37**    "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a Non-Appealable order of the Bankruptcy Court or by agreement of the Debtor against whom the lien is asserted.

**1.38**    "Non-Appealable Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (b) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Non-Appealable Order.

**1.39**    "Organization Documents" shall mean, as applicable, the Debtor's respective operating agreements, trust agreements, articles of incorporation, bylaws, corporate minute books and such other documents evidencing the Debtor's formation and/or operation in such jurisdictions in which the Debtor is authorized to conduct business.

**1.40**    "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.41**    "Personalty" shall mean, collectively, any and all personal property and fixtures owned by the Debtor and at any time attached to, located in or on, or used in connection with, the ownership or operation of the Debtor's Property, including, without limitation, all mechanical, electrical, lighting and plumbing systems, fixtures and equipment, all ventilating, air conditioning and heating systems, fixtures and equipment, all water and power systems, engines boilers, generators, furnaces, motors, landscaping and sprinkler systems and equipment, all furniture, furnishings, appliances, supplies and other personal property (tangible or intangible) of every nature and description, all maintenance equipment, tools and supplies, and all master keys, office keys and other keys used in connection with the Property.

**1.42**    "Petition Date" shall mean December 17, 2015

**1.43**    "Plan" shall mean this ~~Third~~ *Fourth Amended Plan of Liquidation of 7 Bay Corp*, including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.44**    "Plan Fund" shall mean the amounts to be contributed to the Plan by the Debtor from the sale of Units, after payment in full of all Allowed Secured Claims, administrative, and priority claims and in accordance with Exhibit A of this Plan.

**1.45** "Priority Claims" shall mean all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**1.46** "Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.47** "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.48** "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

**1.49** "Property" shall mean the real property, improvements, Rights and Personalty owned by the Debtor.  All references to the "Property" shall be deemed to mean all or any portion of such Property.

**1.50** "Pro Rata" shall mean, (a) when used with reference to a distribution of property under the Plan, proportionately so that with respect to a particular Allowed Claim, the ratio of (i)(1) the amount of property distributed on account of such Claim to (2) the amount of such Claim, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (2) the amount of all Allowed Claims in that Class; and (b) when used with reference to a contribution of property to the Debtors, proportionately so that with respect to a particular Allowed Claim, the ratio of (i)(1) the amount of property contributed by a holder of an Allowed Equity Interest to (2) the amount of such Allowed Equity Interest, is the same as the ratio of (ii)(1) the amount of property contributed by all holders of Allowed Equity interests of the Class in which such Equity Interest is included to (2) the amount of all Allowed Equity Interests in that Class.

**1.51** "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.52** "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.53** "Senior" shall mean (a) with respect to an Allowed Claim, any other Allowed Claim that is entitled to a priority of distribution under the Bankruptcy Code over the subject Allowed Claim, and (b) with respect to a Lien, any other Lien on the same Collateral that is entitled to precedence over the subject Lien with respect to such Collateral.

**1.54** "Settlement Agreement" shall mean that agreement entered into by and between the Debtor and UB Properties, LLC, dated October 24, 2016 (docket no. 304) and approved by the Bankruptcy Court on November 15, 2016 (docket no. 317).   The claim of UB Properties, LLC,

including all rights under the Settlement Agreement, was subsequently assigned to National
Lumber Company in or around May 12, 2017.

## ARTICLE II

## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

**2.1    Non-Classification.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense
Claims and Priority Tax Claims against Debtor are not classified for the purposes of voting on,
or receiving distributions under, the Plan.  All such Claims are instead treated separately in
accordance with the terms set forth in this Article II.

**2.2    Administrative Expense Claims.**

(a)    General.  Except for Professional Fee Claims and except as otherwise agreed to
by the Debtor and the holder of an Allowed Administrative Expense Claim, each such holder
shall be paid in full in Cash on the earlier of: (i) the date such Allowed Administrative Expense
Claim becomes due in accordance with its terms; and (ii) the Effective Date.  If the Debtor
disputes any portion of an Administrative Expense Claim, the Debtor shall pay the Allowed
amount of such Administrative Expense Claim within five (5) days after the entry of a Non-
Appealable Order with respect to the allowance of such disputed Administrative Expense Claim.

U.S. Trustee's Fees.  The outstanding fees due to the United States Trustee pursuant to 11
U.S.C. § 1930 shall be paid in full on or before the Effective Date.  All ongoing fees owed to the
US Trustee shall be paid as part of the Closing costs upon the sale of each unit and shall be
included in the HUD Settlement statement with a check made payable directly to the UST

(a)    Professional Compensation and Expense Reimbursement Claims.

(i)    Within thirty (30) days after the Effective Date, each Professional shall
file a final application for the allowance of compensation for services
rendered or reimbursement of expenses incurred through and including the
Effective Date.  Any such application granted by the Bankruptcy Court
shall be paid: (1) within fifteen days of the entry of the order of the
Bankruptcy Court approving such application, unless a stay of the order
approving the application is obtained; or (2) upon such other terms as may
be mutually agreed upon between the Professional and the Debtor or
Confirmed Debtor.  Payments of administrative legal fees may be paid in
increments from a portion of the net proceeds of unit sales.

(ii)    All fees and expenses of Professionals for services rendered after the
Effective Date shall be paid by the Confirmed Debtor upon receipt of
reasonably detailed invoices in such amounts and on such terms as such
Professional and the Confirmed Debtor may agree.  No further order or
authorization from the Bankruptcy Court shall be necessary to permit the

Confirmed Debtor to pay the fees and expenses of Professionals for services rendered after the Effective Date.

(iii)     Real Estate brokers employed by the Estate are paid upon the closing of each sale as approved and allowed by the Court.

(iv)     The appraiser, Stephen De Castro, employed by the Debtor has been paid by Mr. Buckley and was paid the balance owed ($3,180) from the funds received by the Debtor from the Geisser Bond Claim that has been paid.

(iv)     The Chapter 7 Trustee, Donald Lassman is owed approximately $5,900 and will be paid prior to the Effective Date.

**2.3     Priority Tax Claims.**

At the sole election of the Debtor, each holder of an Allowed Priority Tax Claim against each such Debtor, if any, shall be paid either: (a) upon such terms as may be agreed to between the Debtors and the holder of an Allowed Priority Tax Claim; (b) in full in Cash on the later of the Effective Date or the date that such Allowed Priority Tax Claim would have been due if the Bankruptcy Cases had not been commenced; or (c) in installment payments of Cash commencing on the Effective Date and (i) of a total value as of the Effective Date equal to the Allowed amount of such Claim, (ii) over a period ending not later than five (5) years from the Petition Date, and (iii) in a manner not less favorable than the most favored General Unsecured Claim under the Plan.

**ARTICLE III**

**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

The Claims against and Equity Interests in the Debtor are categorized below for all purposes under the Plan including voting, confirmation and distribution pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**3.1 Claim and Equity Interest Categories**

Claims against and Equity Interests in the Debtor have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | National Lumber Company DIP Facility Secured Claims | Unimpaired | No |
| 2 | National Lumber Company First Secured Claim | Impaired | Yes |
| 3 | Dennis P. Geisser Secured Claims | Unimpaired | No |
| 4 | National Lumber Company Second Secured Claims | Impaired | Yes |
| 5 | Avidia Bank Secured Claim | Impaired | Yes |
| 6 | General Unsecured Claims[1] | Impaired | Yes |
| 7 | Equity Interests | Impaired | Yes |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1    Class 1 – National Lumber Company DIP Facility.**

(a)    Classification.  Class 1 consists of the Allowed National Lumber Company DIP Facility Secured Claims.

(b)    Impairment and Voting.  The Allowed National Lumber Company DIP Facility Secured Claim is unimpaired under the Plan.  The holder of the Allowed National Lumber Company DIP Facility Secured Claim shall not be entitled to vote to accept or reject the Plan.

(c)    Claim Treatment.  In full and complete satisfaction, settlement, discharge and release of the Allowed National Lumber Company DIP Facility Secured Claim, the holder of the Allowed National Lumber Company DIP Facility Secured Claim shall receive payment in accordance with the terms of the Loan Documents and the DIP Financing Motion, as approved by entry of a court order dated June 13, 2017 and the Closing of the Loan

---

[1] Includes any allowed claim of Mina Kairalla.

Documents, or (ii) treatment as agreed between the respective Debtor and the holder of the Allowed National Lumber Company DIP Facility Secured Claim.

(d)     <u>Liens</u>.  The Liens held by the holder of the Allowed National Lumber Company DIP Facility Secured Claim shall be treated as follows.

   (i)     <u>Retention of Liens</u>.  The Liens on National Lumber Company's Collateral shall be retained by the holder of the Allowed National Lumber Company DIP Facility Secured Claim to secure the payment of the Allowed National Lumber Company DIP Facility SecuredClaim pursuant to the Plan.

   (ii)     <u>Release of Liens</u>.  With respect to a sale of National Lumber's Collateral under the Plan, the Liens on National Lumber's Collateral shall be discharged and released, on a per unit basis, as follows:

      (1)     <u>Notice of Closing</u>.  The Debtor shall provide the holder of the Allowed National Lumber Company DIP Facility Secured Claim with at least five (5) days' notice of the scheduled closing of a sale of National Lumber's Collateral under the Plan, which include the units that are completed and sold (or refinanced) as a result of the National Lumber funding.

      (2)     <u>Delivery of Discharge</u>.  At least two (2) Business Days prior to the scheduled closing of a sale or a refinancing of National Lumber's Collateral, the holder of the Allowed National Lumber Company DIP Facility Secured Claim shall deliver to closing attorney a discharge and release of its Liens on the Collateral to be sold/refinanced.

      (3)     <u>Payment/Recording of Discharge</u>.  Within one (1) Business Day after the closing of a sale/refinance of National Lumber's Collateral, the Confirmed Debtor shall deliver the proceeds of such sale to the holder of the Allowed National Lumber Company DIP Facility Secured Claim in accordance with the terms of the DIP Financing Motion. Upon the delivery of the proceeds of the transfer of National Lumber's Collateral to the holder of the Allowed National Lumber Company DIP Facility Secured Claim, National Lumber's Lien on the Collateral sold or refinanced shall be deemed discharged and released, and the closing attorney shall cause the discharge and release of the Lien on the Collateral to be recorded.

(iii)   <u>Discharge of Liens</u>.  Upon payment in full of the Allowed National Lumber Company DIP Facility Secured Claim against the Debtor: (i) all Liens securing the Allowed National Lumber Company DIP Facility Secured Claim against such Debtor shall be deemed canceled, discharged and released, and (ii) the holder of the Allowed National Lumber Company DIP Facility Secured Claim shall deliver to the Confirmed Debtor, within one (1) Business Day of the payment in full of the Allowed National Lumber Company DIP Facility Secured Claim, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of the Liens on the Debtor's Property.

(e)   <u>Indubitable Equivalent</u>.  The holder of the Allowed National Lumber Company DIP Facility Secured Claim shall receive such additional or other treatment as may be necessary, as agreed to between the Debtor and the holder of the Allowed National Lumber Company DIP Facility SecuredClaim or as determined by the Bankruptcy Court, to permit the holder of the Allowed National Lumber Company DIP Facility Secured Claim to realize the indubitable equivalent of its Allowed Claim.

(f)   <u>Loan Documents</u>.   To the extent that there is any inconsistency between the Plan and any of the National Lumber Company DIP Facility Loan Documents, the terms of the National Lumber Company DIP Facility loan documents shall control.

**4.2    Class 2 – UB Properties, LLC Secured Claim.**

(a)   <u>Classification</u>.  Class 2 consists of the Allowed National Lumber Company First Secured Claim.

(b)   <u>Impairment and Voting</u>.  The Allowed National Lumber Company First Secured Claim is impaired under the Plan.  The holder of the Allowed National Lumber Company First Secured Claim shall be entitled to vote to accept or reject the Plan.

(c)   <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, discharge and release of the Allowed National Lumber Company First Secured Claim, the holder of the Allowed National Lumber Company First Secured Claim shall receive payments in accordance with the Settlement Agreement, until the Allowed National Lumber Company First Secured Claim is paid in full.

(d)   <u>Liens</u>.  The Liens held by the holder of the Allowed National Lumber Company First Secured Claim shall be treated as follows.

(1)   <u>Retention of Liens</u>.  The Liens on National Lumber's Collateral shall be retained by the holder of the Allowed National Lumber Company First Secured Claim to secure the payment of

12

the Allowed National Lumber Company First Secured Claim
pursuant to the Plan.   The National Lumber First Secured Liens
shall be subordinated to the Lien of National Lumber Company
DIP Facility, in accordance with the DIP Financing Motion.

(2)      Release of Liens.  With respect to a sale or refinance of
National Lumber's Collateral under the Plan, the Liens on National
Lumber's Collateral shall be discharged and released as follows:

(3)      Notice of Closing.  The Debtor shall provide the holder of
the Allowed National Lumber Company First Secured Claim with
at least five (5) days' notice of the scheduled closing of a sale or
refinance of National Lumber's Collateral under the Plan.

(4)      Delivery of Discharge.  At least one (1) Business Day prior to the
scheduled closing of a sale or refinance of National Lumber's
Collateral, the holder of the Allowed National Lumber Company
First Secured Claim shall deliver to closing attorney a discharge
and release of its Liens on the Collateral to be sold/refinanced (the
Unit Release).

(5)      Payment/Recording of Discharge.  Within one (1) Business Day
after the closing of a sale or refinance of National Lumber's
Collateral Unit(s), the Confirmed Debtor shall deliver the proceeds
of such sale or refinance to the holder of the Allowed National
Lumber Company First Secured Claim in accordance with the
terms of the Settlement Agreement.  Upon the delivery of the
proceeds of a sale or refinance of National Lumber's Collateral to
the holder of the Allowed National Lumber Company First
Secured Claim, National Lumber's Lien on the Collateral Unit(s)
sold/refinance shall be deemed discharged and released, and the
closing attorney shall cause the discharge and release of the Lien
on the Collateral to be recorded.

(6)      Discharge of Liens.  Upon payment in full of the Allowed National
Lumber Company First Secured Claim against the Debtor: (i) all
Liens securing the Allowed National Lumber Company First
Secured Claim against such Debtor shall be deemed canceled,
discharged and released, and (ii) the holder of the Allowed
National Lumber Company First Secured Claim shall deliver to the
Confirmed Debtor, within ten (10) Business Days of the payment
in full of the Allowed National Lumber Company First Secured
Claim, all UCC terminations, mortgage discharges and any other
documents necessary to effect the discharge and release of the
Liens on the Debtor's Property.

(e)    Liens on Additional Collateral:   National Lumber will retain its lien on the additional collateral located at 51 Manomet Street, Hull and 10 Malta Street, Hull, until such time as the Allowed National Lumber Company First Secured Claim against the Debtor is paid in full.

(f)    Indubitable Equivalent.  The holder of the Allowed National Lumber Company First Secured Claim shall receive such additional or other treatment as may be necessary, as agreed to between the Debtor and the holder of the Allowed National Lumber Company First Secured Claim or as determined by the Bankruptcy Court, to permit the holder of the Allowed National Lumber Company First Secured Claim to realize the indubitable equivalent of its Allowed Claim.

**4.3    Class 3 – Dennis Geisser & Sons, LLC Secured Claim.**

(a)    Classification.  Class 3 consists of the Geisser Secured Claim.

(b)    Impairment and Voting.  The Geisser Claim is unimpaired under the Plan. The holder of the Geisser Secured Claim shall not be entitled to vote to accept or reject the Plan as this Claim shall be disallowed.

(c)    Claim Treatment.  On April 29, 2016 the Debtor and Geisser entered into a Settlement Agreement and Mutual Release resolving the claim of Geisser.  On May 5, 2016, Debtor filed a Motion to Approve Compromise of Claim, which was approved by the Court on or about May 27, 2016.

(d)    Liens.  The Liens held by the holder of the Geisser Secured Claim shall be treated as follows.

(i)    Retention of Liens.  Pursuant to the Settlement Agreement, the Liens on the Collateral shall be discharged, dissolved and released upon approval of the Motion to Approve Compromise and payment of funds from the bond company.

**4.4    Class 4 – National Lumber Company Second Secured Claim.**

(a)    Classification.  Class 4 consists of the Allowed National Lumber Company Second Secured Claim.

(b)    Impairment and Voting.  The Allowed National Lumber Second Secured Claim is impaired under the Plan.  The holder of the Allowed National Lumber Second Secured Claim shall be entitled to vote to accept or reject the Plan.

(c)    Claim Treatment.   In full and complete satisfaction, settlement, discharge and release of the Allowed National Lumber Secured Claim, the holder of the Allowed National Lumber Secured Claim shall receive either: (i) payments in accordance with the release price stated in the

Distribution Schedule attached as Exhibit A, until their allowed claim as determined by this Court is paid in full; or (ii) treatment as agreed between Debtor and the holder of the Allowed National Lumber Secured Claim.

(d)   Liens.  The Liens held by the holder of the Allowed National Lumber Second Secured Claim, shall be treated as follows.

(i)   Retention of Liens.  After a determination by this Court as to the validity, amount and extent of its claims and liens, if any, the Liens or claims on National Lumber's Collateral shall be retained by the holder of the Allowed National Lumber Claim to secure the payment of the Allowed National Claim pursuant to the Plan.  The National Lumber Liens shall be subordinated to the Lien of National Lumber DIP Facility and National Lumber First Secured Claim, in accordance with the DIP Financing Motion.

(ii)   Release of Liens.  With respect to a sale or refinance of National Lumber's Collateral under the Plan, the Liens on National Lumber's Collateral shall be discharged and released as follows:

(1)   Notice of Closing.  The Debtor shall provide the holder of the Allowed National Lumber Second Secured Claim, if any, with at least five (5) days' notice of the scheduled closing of a sale or refinance of National Lumber's Collateral under the Plan.

(2)   Delivery of Discharge.  At least two (2) Business Days prior to the scheduled closing of a sale or refinance of National Lumber's Collateral, the holder of the Allowed National Lumber SecondSecured Claim shall deliver to closing attorney a discharge and release of its Liens on the Collateral Unit to be sold.

(3)   Payment/Recording of Discharge.  Within one (1) Business Day after the closing of a sale or refinance of National Lumber's Collateral Unit, the Confirmed Debtor shall either escrow or deliver (subject to any Court order or stipulation between the Debtor and National Lumber) the proceeds of such sale/refinance to the holder of the Allowed National Lumber Second Secured Claim in accordance with the terms of the DIP Financing Motion.  Upon the delivery of the proceeds of a sale/refinance of National Lumber's Collateral to the holder of the Allowed National Lumber Seconed Secured Claim, National Lumber's Lien on the Collateral Unit(s) sold/refinanced shall be deemed

discharged and released, and the closing attorney shall cause the discharge and release of the Lien on the Collateral.

(iii)  Discharge of Liens.  Upon payment in full of the Allowed National Lumber Second Secured Claim, if any and as determined by the Bankruptcy Court, against the Debtor: (i) all Liens securing the Allowed National Lumber Second Secured Claim against such Debtor shall be deemed canceled, discharged and released, and (ii) the holder of the Allowed National Lumber Second Secured Claim shall deliver to the Confirmed Debtor, within one (1) Business Day of the payment in full of the Allowed National Lumber Second Secured Claim, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of the Liens on the Debtor's Property.

(e)  Indubitable Equivalent.  The holder of the Allowed National Lumber Second Secured Claim shall receive such additional or other treatment as may be necessary, as agreed to between the Debtor and the holder of the Allowed National Lumber Second Secured Claim or as determined by the Bankruptcy Court, to permit the holder of the Allowed National Lumber Second Secured Claim to realize the indubitable equivalent of its Allowed Claim.

**4.5    Class 5 – Avidia Bank Secured Claim.**

(a)  Classification.  Class 5 consists of the Allowed Avidia Bank Secured Claim.

(b)  Impairment and Voting.  The Allowed Avidia Secured Claim is impaired under the Plan.  The holder of the Allowed Avidia Secured Claim shall be entitled to vote to accept or reject the Plan.

(c)  Claim Treatment.  Debtor asserts that the Avidia Claim is voidable and will seek to have this Court void the lien by the Debtor, Confirmed Debtor or by appointment of an Independent Fiduciary who has evaluated the facts and legal basis for the claims and rights of the Holder of this Class Claimant.  If Debtor or the Independent Fiduciary is successful in its adversary proceeding, Avidia will be treated as a claimant in Class 6 of the Plan.   If Debtor or the Independent Fiduciary is unsuccessful, in full and complete satisfaction, settlement, discharge and release of the Allowed Avidia Secured Claim, the holder of the Allowed Avidia Secured Claim shall receive either: (i) payments in accordance with the release price stated in the Distribution Schedule attached as Exhibit A, until their allowed claim as determined by this Court is paid in full; or (ii) treatment as agreed between Debtor and the holder of the Allowed Avidia Secured Claim.   While a determination is

pending on the validity of the Avidia Secured Claim, Debtor will reserve the amount (release price) stated in Exhibit A in a separate fund upon the sale or refinance of each Unit and Avidia will provide the appropriate and required lien release in accordance with 4.5(d)(ii).   In the event the lien is declared void, those funds reserved from each sale will be first applied to the unpaid balance owed to National Lumber, if any.   If the National Lumber claims have been paid in full, the funds will be held by Debtor's counsel or a Liquidating Trustee for payment of outstanding secured claims, administrative, and unsecured claims.

(d)    <u>Liens</u>.  The Liens held by the holder of the Allowed Avidia Secured Claim shall be treated as follows.

i.   <u>Retention of Liens</u>.  After a determination by this Court as to the validity, amount and extent of its claims and liens, if any, the Liens on Avidia's Collateral shall be retained by the holder of the Allowed Avidia Claim to secure the payment of the Allowed Avidia Claim pursuant to the Plan.   The Avidia Liens shall be subordinated to the Lien of National Lumber DIP Facility, National Lumber First Secured Claim, and National Lumber Second Secured Claim, in accordance with the DIP Financing Motion.

(ii)  Release of Liens.  With respect to a sale of Avidia's Collateral under the Plan, the Liens on Avidia's Collateral shall be discharged and released as follows (Unit Release):

(1)   <u>Notice of Closing</u>.  The Debtor shall provide the holder of the Allowed Avidia Secured Claim, if any, with at least five (5) days' notice of the scheduled closing of a sale or refinancing of Avidia's Collateral under the Plan.

(2)   <u>Delivery of Discharge</u>.  At least two (2) Business Days prior to the scheduled closing of a sale or refinancing of Avidia's Collateral Unit(s), the holder of the Allowed Avidia's Secured Claim shall deliver to closing attorney a discharge and release of its Liens on the Collateral Unit(s) to be sold or refinanced.

(3)   <u>Payment/Recording of Discharge</u>.  In accordance with the terms of this Plan and payments made in accordance with Exhibit A, if any, within one (1) Business Day after the closing of a sale or refinancing of Avidia's Collateral Unit(s), Avidia's Lien on the Collateral Unit(s) sold or refinanced shall be deemed discharged and released, and the closing attorney shall cause the discharge and release of the Lien on the Collateral Unit(s) sold/refinanced to be recorded.

(4) <u>Discharge of Liens</u>.  Upon payment of the Allowed
Avidia Secured Claim in accordance with Exhibit A, if
any, as determined by the Bankruptcy Court against the
Debtor, or the sale of the last unit: (i) all Liens securing
the Allowed Avidia Secured Claim against such Debtor
shall be deemed canceled, discharged and released, and
(ii) the holder of the Allowed Avidia Secured Claim
shall deliver to the Confirmed Debtor, within one (1)
Business Day of the payment of the Allowed Avidia
Secured Claim, in accordance with Exhibit A, all UCC
terminations, mortgage discharges and any other
documents necessary to effect the discharge and release
of the Lien on the Debtor's Property.

(e) <u>Indubitable Equivalent</u>.  The holder of the Allowed Avidia Secured
Claim shall receive such additional or other treatment as may be
necessary, as agreed to between the Debtor and the holder of the
Allowed Avidia Secured Claim or as determined by the Bankruptcy
Court, to permit the holder of the Allowed Avidia Secured Claim to
realize the indubitable equivalent of its Allowed Claim.

**4.6 Class 6 – Allowed General Unsecured Creditors**

(a) <u>Classification</u>.  Class 6 consists of the Allowed General Unsecured Claims
against the Debtor.

(b) <u>Impairment and Voting</u>.  Class 6 is impaired under the Plan.  Each holder
of a General Unsecured Claim shall be entitled to vote to accept or reject
the Plan.

(c) <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, release
and discharge, each holder of an Allowed General Unsecured Claim shall
receive, commencing upon the later to occur of the Effective Date or the
date such Claim becomes an Allowed Claim, one of the following: (a) a
Pro Rata share of the Plan Fund; or (b) treatment as agreed between the
Confirmed Debtor or the Independent Fiduciary and the holder of the
Allowed General Unsecured Claim.

(d) <u>Claims of Insiders</u>.  No Insiders of the Debtor shall receive any
distributions on account of their Allowed Claims until the Allowed Claims
of all non-Insider creditors have been paid in full.

**4.7 Class 7 - Equity Interests.**

       (a)     <u>Classification</u>.  Class 7 consists of the Allowed Equity Interests in 7 Bay Corp.

       (b)     <u>Impairment and Voting</u>.  Class 7 is impaired under the Plan and shall be entitled to vote to accept or reject the Plan.

       (c)     <u>Treatment</u>.  On the Effective Date, the Equity Interests the Debtor shall be cancelled. To the extent that there are excess funds available after the payment of all the administrative, Priority and the Claims in Classes One thru Six, than the holders of claims in Class Seven shall be entitled to share, pro rata, in any funds available for distribution.

**4.8 Reservation of Rights.**

The Debtor along with any Liquidating Trustee or Independent Fiduciary reserves the right to, among other things, (a) contest the right of the holder of any Claim to vote on the Plan, or designate the vote of the holder of any Claim (b) contest the right of the holder of any Claim to receive distributions under the Plan, and (c) seek to subordinate any Claim for inequitable conduct or otherwise.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1 Plan Implementation.**

The Plan will be funded from the construction and sale of Debtor's Property as well as the new value contribution by Debtor's principals, or entities controlled by Debtor's principal, which has occurred during the course of the administration of the Chapter 11.

**5.2 Sales of Property.**

<u>Sale of Units</u>.  Confirmation of the Plan shall constitute authority for the Confirmed Debtor to continue to sell the remaining units of the project, pay the secured lenders, obtain unit releases, and distribute the proceeds and pay claims in accordance with the Distribution Schedule attached as Exhibit A and in accordance with the Sale Procedures below.

<u>Plan Fund</u>.  Confirmed Debtor or the Liquidating Trustee will establish a Plan Fund upon the sale of the last two units.   Upon the sale of the last unit, and after payment in full of all allowed secured claims, administrative and priority claims, Confirmed Debtor will deposit the excess proceeds from the sale of the last unit into the Plan Fund in order to pay allowed Class 6 claimants.   Class 6 Claimants will share pro-rata in the Plan Fund.

Administration of Plan Fund.  Debtor's counsel as the Liquidating Trustee shall distribute the funds in accordance with the terms of this Plan.  Debtor's counsel, in addition to any administrative fees owed from this chapter 11 and approved by the Court, shall be entitled to a payment of $500.00 for each sale closing, plus costs for administration of the Plan Fund.  Debtor will continue to make payments on the secured claims pursuant to this Plan.

Sale Procedures.  Upon receipt of an offer not less than 10% below the Listing Price stated in Exhibit B of this Plan, the Reorganized Debtor will be authorized to accept the offer and negotiate a purchase and sale agreement.   The Debtor will provide notice to the secured parties of the (a) buyer's name; (b) unit number; (c) sale price; (d) closing date; and (e) estimated cost of completing the unit.

**5.3 Execution of Necessary Documents.**

(a)    Confirmation of the Plan shall constitute authorization by the Bankruptcy Court for the Debtor and/or the Confirmed Debtor to enter into all documents, instruments and agreements necessary to effectuate the terms of the Plan, including without limitation any of the foregoing that may be necessary to sell the remaining units, with the exclusion of any stamp tax due by the Confirmed Debtor to any state, county or local government pursuant to 11 U.S.C. § 1146(a), of the Debtor and Confirmed Debtor.  The form and/or content of the documents, instruments and agreements necessary to effectuate the terms of the Plan shall be subject to the approval of the Debtor and/or the Confirmed Debtor, in their sole discretion.

(b)    All matters provided for in the Plan involving any corporate action required by the Debtor or Confirmed Debtor in connection with the Plan shall be deemed to have occurred, and shall be in effect, without any requirement of further action by the Confirmed Debtor, its agents, representatives, members, managers, officers, directors or Affiliates.

**5.4    Organization Documents and Good Standing.**

As of the Effective Date, the Debtor's Organization Documents shall be amended as necessary to effectuate the terms of the Plan and shall become the Organization Documents of the Confirmed Debtor.  To the extent that there is any inconsistency between the Plan and any of the Organization Documents, the terms of the Plan shall control.  To the extent the Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remain as an organized legal entity in good standing and/or remain authorized as an organized legal entity to conduct business in any jurisdiction, the Debtor and/or the Confirmed Debtor, as the case may be, shall be deemed to be in compliance with any such laws if they comply with such laws within six months after the Effective Date.

**5.5    Revesting of Property**.

Except as otherwise provided in the Plan, the Confirmed Debtor, as of the Effective Date, shall be vested with all of the assets of the Debtor.

**5.6**     **Preservation of Causes of Action.**

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Non-Appealable Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Confirmed Debtor will exclusively retain and may enforce, and the Debtor expressly reserve and preserve for these purposes, in accordance with sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtors or their respective Estates may hold against any person or entity.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation of effectiveness of the Plan.  Debtor may hire an Independent Fiduciary to review any and all causes of action, including any actions against Debtor's principals and insider companies, and Avidia Bank.

**5.7**     **Debtor's Continued Existence.**

Following the Effective Date, the Confirmed Debtor shall remain in existence for the purpose of effectuating the Plan, including: (a) selling the remaining units of the Property (b) reviewing and objecting to Claims against the Debtor, (c) distributing the Plan Fund, (d) conducting an orderly wind down of the Confirmed Debtor's business and affairs, and (e) initiating and prosecuting claims against any third parties and collecting sums owed to the Debtor as a result of such claims.  Upon the Effective Date, the Confirmed Debtor shall each be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code.  Upon the completion of administration of the Plan, the Confirmed Debtor shall be dissolved.

**5.8**     **Default.**

Subject to the provisions of the Debtor's Settlement Agreement with UB Properties dated October 24, 2016 (Doc. No. 304) and approved by an order of the Court dated November 15, 2016 (Doc. No. 317),and assigned to National Lumber as noted herein, no event of default under the Plan shall occur unless, in the event of a breach of the Debtor's or the Confirmed Debtor's obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Confirmed Debtor and such breach is not cured: (i) in the event of a breach that can be cured by the payment of a sum of money, within ten (10) days of the Confirmed Debtor's receipt of such notice; and (ii) for any other breach, within thirty (30) days of the Confirmed Debtor's receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Confirmed Debtor has commenced curing such breach and continue to cure such breach, the thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

# ARTICLE VI

## DISTRIBUTIONS ON CLAIMS AND RESOLUTION OF DISPUTED CLAIMS

### 6.1 Method of Distributions Under the Plan.

(a)    <u>In General</u>.  Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Confirmed Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Confirmed Debtor have been notified in writing of a change of address as of the Distribution Record Date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.  The Confirmed Debtors shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)    <u>Form of Distributions</u>.  Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Confirmed Debtor pursuant to the Plan shall be made by check.

(c)    <u>Distributions to be on Business Days</u>.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    <u>Fractional Dollars</u>.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

(e)    <u>Distributions to Holders as of the Distribution Record Date</u>.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  The Confirmed Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

### 6.2 Objections to Disputed Claims.

Prior to the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Debtor.  On and after the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Confirmed Debtor.

### 6.3 Deadline for Objecting to Disputed Claims.

Except as otherwise provided by order of the Bankruptcy Court, the Debtor, the Confirmed Debtor or Independent Fiduciary as the case may be, may file an objection to a Claim against the Debtor until the later of: (a) the date that such Claim becomes due and payable in

accordance with its terms, (b) sixty (60) days after the Effective Date, or (c) sixty (60) days after the appointment of the Independent Fiduciary.

## 6.4 Estimation of Claims.

The Debtor or the Confirmed Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Confirmed Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Debtors from pursuing any supplemental proceedings to object to any payment of such Claim. All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The Debtor may seek to estimate the claim of Mina Kairalla which is the subject of a pending adversary proceeding, case no. 16-01102.

## 6.5 Disputed Claims Reserve.

(a)   Establishment. The Confirmed Debtor shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the net distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Non-Appealable Order.

(b)   Investment of Cash. Cash in the Disputed Claims Reserve may be invested by the Confirmed Debtor only in Cash Equivalents having maturities sufficient to enable the Confirmed Debtor to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions or accretions on account of such investment in Cash Equivalents shall be for the sole benefit and account of the Confirmed Debtor, and the Confirmed Debtor shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)   Distributions Upon Allowance of Disputed Claims. The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Non-Appealable Order. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve or a Confirmed Debtor with respect to such Claim until the Disputed Claim shall become an Allowed Claim.

## 6.6 Reversion of Unclaimed Checks and Disputed Claims Reserve.

The following amounts shall revert and be vested in the Confirmed Debtor free and clear of any claim or interest of any holder of a Claim under the Plan: (a) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of 180 days after the date of such distribution; (b) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim; and (c) any Allowed Claim that is disallowed and expunged pursuant to the Plan.

**6.7     Obligation to Provide Tax Documents.**

No Person entitled to a payment or distribution under the Plan shall receive such distribution or payment until the Person provides the Confirmed Debtor with: (a) a W-9 or similar federal or state tax form, and (b) such other tax forms as are reasonably requested by the Confirmed Debtors (collectively the "Tax Forms").  If any Person holding an Allowed Claim fails to provide a Tax Form to the Confirmed Debtor after two written requests for a Tax Form, such Person's Allowed Claim shall be disallowed and expunged without further order of the Bankruptcy Court.

## ARTICLE VII

## VOTING ON THE PLAN AND CRAMDOWN

**7.1 Voting of Claims.**

Each holder of an Allowed Claim in an impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan.  Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

**7.2 Acceptance by Impaired Classes.**

An impaired class of Claims or Equity Interests shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

**7.3 Nonconsensual Confirmation.**

If any impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtors reserve the right (a) to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with Section 12.3 of the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, POST-PETITION CONTRACTS AND RETIREE AND COMPENSATION BENEFITS

### 8.1 Assumption of Executory Contracts and Unexpired Leases.

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpected lease (excluding insurance policies) that (a) has not expired by its own rejection with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (b) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (c) is not designed by the Debtor as being an executory contract or unexpired lease to be assumed at the time of confirmation of the Plan, shall be deemed rejected on the Effective Date. This includes any alleged executory contract of Mina Kairalla, which is rejected, under this Plan to the full extent possible. The entry of the Confirmation Order by the Bankruptcy Court shall constitute the approval of the rejection of executory contracts and unexpired leases pursuant to this section of the Plan and Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

### 8.2 Payments Related to The Assumption of Executory Contracts And Unexpired Leases.

(a)      <u>Payment of Claims Arising From Assumed Contracts And Leases</u>.  Any Allowed Claims arising from the assumption of an executory contract or unexpired lease will receive, in full and complete satisfaction, settlement, release and discharge of such Claims and at the election of the Debtor, either: (i) payment in the ordinary course of business as and when such Allowed Claims become due pursuant to such executory contract or unexpired lease, or (ii) payment as agreed between the Debtor and the counter-party to the assumed contract or lease.

(b)      <u>Disputed Claims and Bar Date</u>.  If there is a dispute regarding (i) the amount of any claim arising from the assumption or rejection of an executory contract or unexpired lease, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of further performance," within the meaning of Section 365 of the Bankruptcy Code, under a contract or lease to be assumed, or (iii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Non-Appealable Order resolving the dispute and approving the assumption.

### 8.3 Rejection Damage Claims.

If the rejection of an executory contract or unexpired lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estates, the Confirmed Debtor and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before thirty (30) days following the later to occur of: (a) the rejection of such executory contract or unexpired lease, and (b) the Confirmation Date.  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the

provisions of the Plan.  The Debtor or the Confirmed Debtor, as the case may be, shall have the right to object to any such Claim for rejection damages in accordance with the Plan.

# ARTICLE IX

# RELEASE AND DISCHARGE OF CLAIMS

**9.1 Discharge.**

Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement, release and discharge as against the Debtor and the Confirmed Debtor of any debt or obligation of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtor or its Estate of any nature, including, without limitation, any setoff claims and/or any interest accrued on any Claim from and after the Petition Date, whether or not: (a) a proof of claim based on such debt, obligation or Equity Interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan.

**9.2 Injunction Relating to the Plan.**

As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, its Estate or the Confirmed Debtor, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

**9.3 Releases.**

**Except as otherwise set forth in the Plan, as of the Effective Date, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, (a) each holder of a Claim or Interest that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or Equity Interest or at any time was a creditor or equity holder of the Debtor and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release, waive and discharge all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the Confirmed Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other**

occurrence taking place on or prior to the Effective Date in any way relating to a Debtor, the Bankruptcy Cases or the Plan that such entity has, had or may have against any Debtor, the Estates, the Estate's Assets, the Confirmed Debtor and/or the Confirmed Debtor's Assets.  The principal of the Debtor, Steven Buckley, Pentagon Construction, Inc., and Samoset Development Corp., are specifically excluded from this Release, as released parties.

### 9.4 Cancellation of Existing Indebtedness and Liens.

Except as may otherwise be provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing same, including without limitation any rights of setoff, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled, discharged and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the Confirmed Debtor.  To the extent deemed necessary or advisable by the Confirmed Debtor, any holder of a Claim shall promptly provide the Confirmed Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

### 9.5 Exculpation.

Except as otherwise set forth in the Plan, neither the Debtor, the Confirmed Debtor, nor any of their managers, advisors, attorneys, successors or assigns, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of these Chapter 11 bankruptcy proceedings, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan occurring prior to the Effective Date, provided that the terms of this Section 9.5 shall not apply to any liability for willful misconduct or ultra vires acts.

### 9.6 Setoffs.

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Debtor, the Estate and/or the Confirmed Debtor of any rights of setoff each may have against any Person.

## ARTICLE X

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

### 10.1    Conditions Precedent to Effectiveness.

27

Subject to Section 10.2 of the Plan, the following are conditions precedent to the occurrence of the Effective Date:

(a)     The Confirmation Order, in form and substance reasonably acceptable to the Debtors shall have been entered by the Bankruptcy Court and shall not be subject to any stay;

(b)     The Confirmation Order shall have become a Non-Appealable Order;

(c)     All actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective.

**10.2    Waiver of Conditions.**

Except for the condition set forth in Sections 10.1(a) of the Plan, the Debtor may, in its sole discretion, waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 10.1, without notice to any creditors or parties in interest and without Bankruptcy Court approval.  The failure to satisfy or waive any condition precedent to the occurrence of the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied.

**10.3    Effect of Non-occurrence of Conditions to the Effective Date.**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgement, offer or undertaking by the Debtor.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Cases and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)     To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)     To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, authorized pursuant to the Plan or the Bankruptcy Code;

(c)     To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of

executory contracts and unexpired leases to which any Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)        To enforce and adjudicate the provisions of the Plan subject to the terms of the Plan;

(e)        To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)        To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(g)        To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)        To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)        To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement, post-confirmation modification, or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)        To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)        To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)        To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)        To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to Section 5.6 of the Plan; and

(n)        To enter an order and/or final decree concluding the Bankruptcy Cases.

## ARTICLE XII

## MISCELLANEOUS

**12.1    Continuation of Injunctions or Stays Until Effective Date.**

All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## 12.2    Final Decree

After the Effective Date of the Plan, Confirmed Debtor may move for a Final Decree, prior to the sale of the last unit.

## 12.3    Exemption from Transfer Taxes.

In accordance with Section 1146(a) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the sale of the remaining units of the Property, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

## 12.4    Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor or the Confirmed Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

## 12.5    Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

**12.6    Revocation or Withdrawal of the Plan.**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

**12.7    Binding Effect.**

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**12.8    Notices.**

All notices, requests and demands to or upon the Debtor or the Confirmed Debtor shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

> 7 Bay Corp
> 51 Manomet Street
> Hull, MA 02045
> Attention: Steven Buckley

With a copy to:

> McAULIFFE & ASSOCIATES, Professional Corporation
> 430 Lexington Street
> Newton, MA 02466
> John M. McAuliffe, Esq.
> Kathryn Pellegrino, Esq.
> Telephone: (617) 558-6889
> E-mail: john@jm-law.net

**12.9    Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.10    Withholding and Reporting Requirements.**

In connection with the consummation of the Plan, the Confirmed Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**12.11    Post-Confirmation Fees, Final Decree.**

The Confirmed Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, the Confirmed Debtor will serve the United States Trustee with a monthly financial report for each monthly (or portion thereof) the case remain open.  The monthly financial report shall include the following:

(a)    A statement of all disbursements made during the course of the quarter, whether or not pursuant to the plan;

(b)    A summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

(c)    The Confirmed Debtor's projections as to its continuing ability to comply with the terms of the plan;

(d)    A description of any other factors which may materially affect the Confirmed Debtor's ability to consummate the plan; and

(e)    An estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

**12.12    Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.13    Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.  However, the provisions of the Plan are subject to the provisions of the Settlement Agreement executed by and among UB Properties, the Debtor, Pentagon Construction, Inc., and

Samoset Development, Corp dated October 24, 2016 (Doc. No. 304) and approved by an order of the Court dated November 15, 2016 (Doc. No. 317) and as subsequently assigned to National Lumber and the Order confirming the Plan.  In the event and to the extent that the provisions of the Plan are inconsistent with the Settlement Agreement or Order, the provisions of the Settlement Agreement or Order shall control and take precedence.

7 BAY CORP                                        Counsel for the Debtor,

/s/Steven Buckley
By: Steven Buckley                                /s/ John M. McAuliffe
Its:  President                                   McAULIFFE & ASSOCIATES,
                                                  Professional Corporation
                                                  430 Lexington Street
                                                  Newton, MA 02466
                                                  John M. McAuliffe, Esq. (BBO #555109)
                                                  Kathryn Pellegrino, Esq. (BBO #654743)
                                                  Telephone: (617) 558-6889
                                                  E-mail: john@jm-law.net

Dated: ~~July 28, 2017~~September 27, 2017

**EXHIBIT A**

**Distribution Schedule**